UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RICHARD OWENS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO.  1:00cr34 |
| | ) | (1:04cv103) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

<u>OPINION AND ORDER</u>

This matter is before the court on a "Motion Under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a Person in Federal Custody", filed by the petitioner, Richard

Owens ("Owens"), on March 24, 2004.  The government filed its response on May 28, 2004, to

which Owens replied on September 7, 2004.  Also on September 7, 2004, Owens filed a

supplement to his petition.

On September 22, 2004, this court entered an order staying this case pending the United

States Supreme Court's resolution of the <u>United States v.  Booker</u> case.   In January, the

Supreme Court affirmed the <u>Booker</u> case[1] and, thus, the court will proceed to rule on Owens'

petition.

<u>Discussion</u>

On April 11, 2001, a jury found Owens guilty of bank robbery.  On November 15, 2001,

this court sentenced Owens to 151 months of imprisonment, after finding that Owens' testimony

was false and amounted to an obstruction of justice.  On November 21, 2001, Owens filed his

Notice of Appeal, and on October 22, 2002, Owens' judgment of conviction was affirmed by the

---

[1] 125 S.Ct.  738 (2005).

Seventh Circuit Court of Appeals.  On January 21, 2003, Justice Stevens of the United States Supreme Court granted Owens up to and including March 21, 2003 to file a petition for a writ of certiorari.  Owens failed to file a petition for a writ of certiorari.

In Owens' petition before this court, he raises a whole host of issues including ineffective assistance of counsel, violation of the Fourth, Fifth and Sixth Amendments, improper grand jury selection, invalid criminal statute, false testimony by the government at trial, and disparity of sentence compared to co-defendants.

In Owens' supplement to his petition, he specifically claims that his sentence violated the Sixth Amendment, citing to the recent Supreme Court decision, Blakely v. Washington, 124 S. Ct. 2531 (2004).  In Blakely, the Supreme Court ruled that the Washington state courts could not constitutionally rely on judicial findings to impose a sentence above the "standard range" set forth in the statute.  In United States v. Booker, 375 F.3d 508 (7th Cir. 2004), the Seventh Circuit Court of Appeals held that the ruling in Blakely rendered the federal sentencing guidelines unconstitutional. Owens, who received a 151 month sentence, claims that a sentence based upon the facts submitted to a jury would be in the range of 33 to 41 months.  Owens seeks to be re-sentenced.

The court will first discuss the Booker/Blakely issue raised in Owens' supplement to his petition.  In Booker, 125 S.Ct. 738, the Supreme Court applied the rule of Blakely and Apprendi v. New Jersey, 120 S.Ct. 2348 (2000), to the federal Sentencing Guidelines and found a Sixth Amendment violation. As a remedy, the Court severed and excised from the Sentencing Reform Act of 1984 the provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), effectively rendering the Guidelines advisory. Booker, --- U.S. ----, at ----, 125 S.Ct. 738, --- L.Ed.2d ----, at

2

----, 2005 WL 50108, at *16.

However, the case law clearly establishes that <u>Booker</u> is not retroactive on collateral review. <u>McReynolds v. United States</u>, 397 F.3d 479, 2005 WL 237642 (7th Cir. Feb.2, 2005); see also <u>Green v. United States</u>, 397 F.3d 101, 2005 WL 237204, at *1 (2d Cir. Feb.2, 2005) (per curiam); <u>In re Anderson</u>, 396 F.3d 1336, 2005 WL 123923, at *3-4 (11th Cir. Jan.21, 2005). Indeed, the Seventh Circuit expressly stated in <u>McReynolds</u>: "[w]e conclude, then, that <u>Booker</u> does not apply retroactively to criminal cases that became final before its release on January 12, 2005." <u>McReynolds</u>, 397 F.3d at 481.

Accordingly, as Owens' criminal case became final before January 12, 2005, <u>Booker</u> does not apply, and this court need not re-determine his sentence.

The court will now turn to the issues raised in Owens' main § 2255 petition.  To obtain relief under § 2255, a petitioner must show that there are "flaws in the conviction or sentence which are jurisdicitonal in nature, constitutional in magnitude, or result in a complete miscarriage of justice." <u>Boyer v.  United States</u>, 55 F.3d 296, 298 (7th Cir.  1995).  However, a § 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal." <u>McCleese v. United States</u>, 75 F.3d 1174, 1177 (7th Cir.  1996).  Accordingly, there are three types of issues which cannot be raised by way of a § 2255 motion:

(1)    issues that were raised on direct appeal, absent a showing of changed circumstances;

(2)    non-constitutional issues that could have been but were not raised on direct appeal; and

(3)    constitutional issues that were not raised on direct appeal, unless the § 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

Belford v.  United States, 975 F.2d 310, 313 (7th Cir.  1992)(overruled on other grounds,

Castellanos v.  United States, 26 F.3d 717 (7th Cir.  1994)).  The failure of a petitioner to

establish either cause or prejudice relating to the third type of issue above requires dismissal of

the habeas petition.  Salberg v.  United States, 969 f.2d 379, 381 (7th Cir.  1992).

      Ineffective assistance of counsel claims are governed by the two-prong standard set forth

by the Supreme Court in Strickland v.  Washington, 104 S.Ct.  2052 (1984).  Under that

standard, a defendant is entitled to relief if counsel's performance fell below the wide range of

professionally competent assistance and the defendant suffered prejudice as a result of that

performance.  Prejudice under the Strickland standard means a "reasonable probability that but

for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability to undermine confidence in the outcome."  104 S.Ct.  at

2068.

      With respect to Owens' constitutional claims, it is clear that the failure to raise even a

constitutional challenge at trial or on direct appeal bars a defendant from raising the issue in a §

2255 proceeding absent a showing of cause for the procedural default and actual prejudice.

Norris, 687 F.2d at 903, Salberg v.  United States, 969 F.2d 379, 381 (7th Cir.  1992).  Although

ineffective assistance of counsel can serve as good cause for failure to raise an issue in the direct

proceedings, Prewitt v.  United States, 83 F.3d 812, 816 (7th Cir.  1996), it does not serve as

cause when trial counsel and appellate counsel are different.  Dugan v.  United States, 18 F.3d

460 (7th Cir.  1994).  In the present case, Stanley Campbell was Owens' trial counsel and Robert

Truitt served as appellate counsel and counsel during the sentencing proceedings.

4

Owens asserts the following claims[2]:

Ground One: Ineffective Assistance of Counsel
        a.      Failure to interview and produce alibi witnesses regarding presence at planning stage of robbery.

        b.      Failure to produce a witness who could corroborate a reason petitioner was in the area of the bank robbery.

        c.      Failure to locate and interview a witness who would corroborate that petitioner was in the area to obtain a part for his trailer.

Ground Two: Arrest without probable cause, in violation of the Fourth Amendment.

Ground Three: Violation of Sixth Amendment right to a speedy trial.

Ground Four: Ineffective assistance of appellate counsel.

Ground E: Violation of Sixth Amendment right to a fair jury trial, due to jury not consisting of petitioner's peers.

Ground F: Grand jury that indicted petitioner was not composed of a fair cross section of the community.

Ground G: The bank robbery statute was beyond the power of Congress to enact.

Ground H: Conviction violated the Fifth Amendment because the National Credit Union Act does not provide for a federal cause of action.

Ground H: The government used false testimony during the course of the trial in violation of the Fifth Amendment.

Ground I: Disparity in the petitioner's sentence compared to the sentence of a co-defendant.

With respect to Ground One, ineffective assistance of counsel, Owens has alleged eight instances

in which he believes his counsel was ineffective:

---

[2] Owens' petition uses both numbers and letters to identify his claims, with the letter H being used twice.  In order to avoid further confusion, the court will retain Owens' labeling method throughout this order.

1.      Failure to interview and produce alibi witnesses.

2.      Failure to locate and interview witnesses regarding his presence in the area of the bank robbery.

3.      Failure to move to suppress "show-up" identification.

4.      Failure to move to suppress statements purportedly made by petitioner regarding the theft of his vehicle as fruits of an unlawful arrest.

5.      Failure to move to suppress unspecified evidence as fruit of an unlawful arrest.

6.      Failure to move to dismiss the indictment for speedy trial violations.

7.      Failure to request a cautionary instruction regarding co-defendant's statements.

8.      Failure to move to suppress co-defendant's statements.

To make a successful ineffective assistance of counsel claim, Owens must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial.  Strickland v. Washington, 104 S.  Ct.  2052 (1984).  Owens must show both deficient performance and prejudice to prevail on an ineffective assistance of counsel claim, a failure to show one or the other will defeat the claim.

"With regard to the performance prong, [the] defendant must direct the court to the specific acts or omissions which form the basis of his claim.  The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance."  Fountain v.  United States, 211 F.3d 429, 434 (7th Cir.  (2000).  Even if Owens could satisfy the performance prong, he must still fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different." United States v. Starnes, 14 F.3d 1207, 1209-10 (7th Cir.  1994).

With respect to Owens' claim that his counsel was ineffective because he failed to call alibi or fact witnesses, it is clear that Owens has failed to meet the Strickland standards.  Owens has failed to identify what specific witnesses should have been called.  Moreover, Owens has not provided any sworn affidavits of what the testimony of the witnesses would have been if called. Prewitt v.  United States, 83 F.3d 812, 819 (7th Cir.  1996).  As the Seventh Circuit stated in United States v.  Ashimi, 932 F.2d 643, 650 (7th Cir.  1991), "[a] defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  Additionally, the Seventh Circuit has held that "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him." United States v.  Balzano, 916 F.2d 1273, 1294 (7th Cir.  1990).

With respect to Owens' claims that his counsel should have moved to suppress his statement regarding the theft, the following facts are pertinent.  Owens testified on his own behalf during the trial, and he was presented with Government Exhibit 43, an Allen County Police Report of a Stolen Vehicle, which was signed by Owens.  In that report, Owens provided a description of the person he stated stole his automobile.  The police report was made at Owens' request and was not the result of a police interrogation.  During the trial, Owens' counsel admonished him to not take the stand and testify.  Clearly, given these facts, there was no basis for a motion to suppress the statement.  Owens has not met the Strickland standards with respect to this claim.

Likewise, there was no competent legal basis for Owens' trial counsel to attempt to

suppress the statements of Owens' co-defendant.  The law is clear that unless a defendant can

show that a search and seizure violated his personal Fourth Amendment rights, he may not

challenge the alleged violation of another person's rights.  United States v. Padilla, 508 U.S. 77

(1993).

Owens claims that his counsel should have requested a cautionary instruction regarding

his co-defendant's statements.  However, it is clear that a cautionary instruction was given in this

case.  Court's Instruction 13 states in pertinent part:

> You have heard the testimony from James David Thompson, Jr.
> and Ronald Fowlkes who received benefits from the government in
> this case; . . . You may give their testimony such weight as you
> feel it deserves, keeping in mind that it must be considered with
> caution and great care.

Clearly, Owens has not shown any deficiency in his counsel's performance with respect to this

issue.

Owens has further alleged that his counsel failed to move to suppress unspecified

evidence found four days and 30 days after the bank robbery.  With respect to this claim, this

court notes that the Seventh Circuit has clearly held that "[i]t is the rule of this Court that in

order for a hearing to be granted, the petition must be accompanied by a detailed and specific

affidavit which shows that the petition had actual proof of the allegations going beyond mere

unsupported assertions."  Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996).  Owens has

not specified what particular evidence belonging to him was found four days and 30 days

following the bank robbery that should have been suppressed.  The record shows that Owens'

counsel did object to the admission of Government's Exhibit 40, sunglasses, and Government's

Exhibit 3, glasses, on the ground of relevancy.  Assuming that these are the items of evidence

8

underlying Owens' claim,

it is clear that he has no basis for claiming ineffective assistance of counsel.  Owens' theory of defense at trial was that he did not participate in the bank robbery.  In order to move to suppress the glasses and sunglasses (or any other personal items), Owens would have had to claim the property as his own, which would have weakened his theory of the case.  Thus, it is clear that given Owens' line of defense, he had no standing to move to suppress evidence consisting of personal items which he asserted did not belong to him.

Owens next claims that his counsel was ineffective for stipulating that the funds of the Three Rivers Federal Credit Union were insured by the United States.  Owens asserts, without evidence or authority, that the funds were not federally insured.  As noted, Owens' trial strategy was that he was not involved in the credit union robbery.  Clearly, by having Owens stipulate that the funds of the credit union were federally insured (which they are), his counsel followed sound trial strategy to focus the jury's attention on the real issue at trial, the identity of the person who robbed the credit union.  Trial counsel's strategy of focusing on the identity of the robber and not the undisputed issues does not fall "below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.

Owens next argues that his counsel was ineffective for failing to move to suppress the "show-up" identification, and for failing to make various evidentiary objections regarding the admissibility of Owens' boots and earrings.  Owens claims that his arrest was unlawful, and thus the above evidence should have been suppressed.

The record shows that the bank tellers gave a description of what the robber was wearing inside the bank.  Additionally, witnesses saw the robber leave the bank and get into a white

9

vehicle.  Officer Hershberger was entering the bank parking lot at the time the robber was leaving the bank, and pursued the individual in the white automobile.  When the robber abandoned the automobile, Officer Hershberger gave a description of the clothing the robber was wearing, and he also recovered from the white vehicle the money stolen from the bank.  Officers pursued the robber on foot, and Owens was eventually arrested by Officer Snyder in a gas station in the immediate vicinity of the bank robbery.  Clearly, given the facts of the pursuit and arrest of Owens, there was sufficient probable cause to justify Owens' lawful arrest.

After the arrest, Owens was presented to a witness to the robbery, who identified Owens by his boots and earrings.  Although defense counsel did not make specific objections to the introduction of the boots and earrings worn by Owens, counsel did vigorously cross-examine the witness regarding her testimonial description of the bank robber and the fact that he was wearing boots and earrings with the apparent purpose of discrediting the witness' identification testimony.  The strategy of the defense was that notwithstanding any similarity between Owens and the bank robber, Owens did not rob the bank.

It is clear that the court must evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.  United States v.  Ashimi, 932 F.2d 643, 648 (7th Cir.  1991). It is clear that Owens' bare allegations of ineffective assistance of counsel do not demonstrate that his counsel's strategy was unreasonable.

In Ground Two, Owens asserts that he was arrested without probable cause in violation of the Fourth Amendment.  Owens states that he was arrested at a gas station two miles from the bank robbery, and that the officers that arrested him did not have a warrant for his arrest.  Owens

10

further claims that the officers did not have probable cause to believe he had committed the bank robbery.

As the government has noted, this argument was not raised before trial or on appeal. Therefore, Owens has waived this argument.  Moreover, Owens has not made any showing of cause for the default, nor has he shown any actual prejudice.

In Ground Three, Owens claims that his right to a speedy trial was violated.  Owens states that he was arrested on June 23, 2000 and that an indictment was returned on July 13, 2000.  Owens claims that his trial should have commenced on or before March 20, 2001. However, Owens does not explain how he calculated this date, and he does not appear to have taken into account the various motions that were filed in this case, and which toll the time limits in the Speedy Trial Act.[3]   In any event, Owens has waived this argument, as he did not raise this issue before trial and did not present this issue on direct appeal.

In Ground Four, Owens claims that his appellate counsel was ineffective because he conceded that Owens committed the crime of robbing the credit union, and failed to preserve certain sentencing issues for appellate review.  As noted above, ineffective assistance of counsel

---

[3]   Certain pretrial delays are automatically excluded from the Act's time limits, such as delays caused by pretrial motions. 18 U.S.C. § 3161(h)(1)(F). In *Henderson v. United States*, 476 U.S. 321, 330 (1986), the Supreme Court held that § 3161(h)(1)(F) excludes "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" The Act also excludes a reasonable period (up to 30 days) during which a motion is actually "under advisement" by the court. 18 U.S.C. § 3161 (h)(1)(J). Other delays excluded from the Act's time limits include delays caused by the unavailability of the defendant or an essential witness (18 U.S.C. § 3161(h)(3)); delays attributable to a co-defendant (18 U.S.C. § 3161(h)(7)); and delays attributable to the defendant's involvement in other proceedings, including delay resulting from an interlocutory appeal. 18 U.S.C. § 3161(h)(1)(E).
1.

claims are governed by the two-prong standard in <u>Strickland</u>.  Thus, Owens must show that his appellate counsel's performance fell below the wide range of professionally competent assistance and that he suffered prejudice as a result of that performance.  While Owens believes, in hindsight, that his counsel should have pursued a different strategy, or raised different issues, there is no evidence that his counsel's actions fell below an objective standard of reasonableness.

The Seventh Circuit opinion in Owens' case is located at 308 F.3d 791.  This opinion shows that Owens' appellate counsel challenged two upward adjustments in the sentencing guidelines, one for Owens' aggravating role as an organizer of the crime, and the other for obstruction of justice for giving false information to police officers.  Further, Owens' counsel challenged his "high-end" sentence.  This court finds that Owens has failed to show ineffective assistance of counsel for two reasons.  First, it is not clear that Owens' counsel ever conceded Owens' guilt, as Owens claims.  Second, there is no evidence that Owens' counsel did not raise the best issues on appeal.  Although criminal defendants often want their counsel to raise a multitude of issues (most of which have little or no merit), it is wise strategy for appellate counsel to focus on the issues that are most likely to be won.  The Seventh Circuit has page limitations on appellate briefs, and also has a time limit for oral arguments.  Thus, not every issue that a defendant thinks of can, or should, be presented on appeal.  Rather, as happened in this case, the best issues are chosen and presented on appeal.  There is no showing that Owens' appellate counsel's performance fell below the wide range of professionally competent assistance.

In Ground E, Owens asserts that his Sixth Amendment right to a "jury of his peers" was violated because all of the members of the jury were white, whereas Owens is African-

American. Owens also states that the only African-American member of the jury panel was stricken by the prosecution.  Owens claims (without citation to any authority) that the racial composition in the Northern District of Indiana, Fort Wayne Division is approximately 70% white, 20% African-American, and 10% Hispanic.  Owens argues that the court's jury selection plan is defective because his jury did not reflect this diversity.

The law is clear that a defendant has no constitutional right to a representative jury, only to an impartial jury.  Holland v.  Illinois, 493 U.S. 474, 480 (1990).  An understanding of how an impartial jury is assembled includes a representative venire[4], such that the venire will be drawn from a fair cross-section of the community.  Id.  The fair cross-section requirement applies only to the selection of the venire and not the petit jury.  Id.  There is no requirement that the venire or jury mirror the general population and defendants are not entitled to a jury of any particular composition.  United States v.  Raszkiewicz, 169 F.3d 459, 462 (7th Cir.  1999).  In order to establish a prima facie violation of the fair cross-section requirement, Owens would have to show: "(1) that the group alleged to be excluded is a 'distinctive' group within the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusions of the group in the jury-selection process."  United States v.  Guy, 924 F.2d 702, 705 (7th Cir.  1991).  A petitioner's "mere observation that there are no African-Americans on a panel that was drawn from a population containing African-Americans simply is not sufficient to demonstrate any systematic exclusion."  Id.  at 706; United States v.  Phillips, 239 F.3d 829, 842 (7th Cir.  2001).

---

[4] The venire is the entire panel from which a jury is drawn.

In this district, grand and petit jurors are selected at random from the general election voter registration lists and, in those counties which do not maintain voter registration lists, from the lists of actual voters.  Owens has failed to make any showing that this jury selection plan is flawed or systematically excludes any distinctive group.

In Ground F, Owens claims that his right to a grand jury composed of a fair cross-section of the community was violated.  Owens again claims that African-Americans were systematically excluded, arguing that the number of African-Americans sitting as grand jurors does not compare well with the number of African-Americans in the community.

Pursuant to Rule 12(b)(2) of the Federal Rules of Criminal Procedure, objections based on defects in the Indictment must be raised prior to trial or they are waived.  A challenge to the racial composition of a grand jury falls within the ambit of Rule 12(b)(2).  Davis v.  United States, 411 U.S. 233, 241-43 (1973).  In Davis, a defendant challenged the racial composition of his grand jury in a § 2255 collateral attack, and the Supreme Court held that the defendant had to prove both cause and actual prejudice to succeed in his claim, even though he would have been entitled to a presumption of prejudice if he had raised his claim in a timely manner.  Moreover, "[t]he presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner."  Id.  at 245.  The prejudice prong in the "cause and prejudice" standard was not satisfied by the presumption of prejudice that would have attached if the claim had been raised directly.  Id.

In the present case it is clear that Owens has failed to allege sufficient facts regarding the unconstitutionality of this court's jury selection plan.  Owens has not included a comparison of

14

statistical data of the number of African-Americans in the Northern District of Indiana and the number of African-Americans who have served as grand jurors in the Northern District. Additionally, Owens has not presented any evidence that African-Americans were excluded from the grand jury that indicted him.

In Ground G, Owens asserts that his conviction is void because the statute under which he was prosecuted is beyond the power of Congress to enact.  Owens claims that there is no appropriate reason for the crime of robbing a federal credit union to be a federal crime.  Not surprisingly, Owens does not support his assertions with any authority.  Federal credit unions are federally insured, and for that reason robbing a federal credit union is a federal crime.  Owens' argument is unsupported and meritless.

In Ground H, Owens claims that his Fifth Amendment rights were violated because the National Credit Union Administration Act, 12 U.S.C. § 1752a allegedly does not contain any element establishing a federal cause of action.   Owens was convicted of violating 18 U.S.C. § 2113, which makes robbing a bank, credit union, or savings and loan association a crime.  Thus, it is immaterial whether the National Credit Union Administration Act does or does not contain elements establishing a federal cause of action.

In a separate ground, also titled "Ground H", Owens claims that the government knowingly used false testimony in his trial, in violation of the Fifth Amendment.  Clearly, to the extent that a defendant believes any testimony at trial to be untrue, it is the job of defense counsel to question the testimony, and then it is the jury which decides whom to believe.  Owens has not stated a Fifth Amendment violation, nor any other constitutional violation with respect to the allegedly false testimony.

In Ground I, Owens claims that he was denied due process of law because there was a significant disparity in the sentence he received compared to the sentence that his codefendants received.  Owens received a 151 month sentence, whereas his co-defendants received sentences of 57 months and 63 months.  As the government points out, Owens' sentence was enhanced for brandishing a dangerous weapon, being the leader of an organization, and for obstruction of justice.  His co-defendants' sentences were not enhanced for any of these reasons, but were decreased for cooperating with the government and testifying against Owens.  Thus, clearly, Owens has only himself to blame for his lengthy sentence.

<u>Conclusion</u>

On the basis of the foregoing, Owens' § 2255 petition is hereby DENIED.


 Entered: April 22, 2004.


<u>s/ William C.  Lee    </u>
William C. Lee, Judge
United States District Court

16